SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JUDITH R. HARPER, OSB #903260**
Assistant United States Attorney
Judi.Harper@usdoj.gov
310 West Sixth Street
Medford, OR 97501
Telephone:  (541) 776-3564
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 1:25-mj-00371-CL-1 |
| v. | |
| **SAMUEL RODRIGO MELO SANTOS,** | **GOVERNEMNT'S DETENTION MEMORANDUM** |
| **Defendant.** | |

Defendant Samuel Rodrigo Melo Santos has little community ties to the District of Oregon and United States.  He presents a serious risk of flight and danger to the community and should remain detained pending trial.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In July 2025, an ATF Industry Operations Investigator conducted an inspection of IV Guns and Ammo in Cave Junction, Oregon.  The inspector observed repeated sales of the same make and model of firearm, which is an indicator of firearms trafficking, being purchased by a group of individuals that shared the same addresses in O'Brien, Oregon and Medford, Oregon. These firearms included Beretta pistols and Smith & Wesson M&P 22 rifles.  One of the individuals purchasing these guns was identified as defendant Samuel Rodrigo Melo Santos.

**Government's Detention Memorandum**                                                              **Page 1**

In total, Samuel Rodrigo Melo Santos purchased 91 firearms from IV Guns and Ammo since May 2024. According to the FFL's records his first purchase was on May 17, 2024, when he purchased one Beretta, model 92GTS, 9mm pistol. During all of Melo Santos' firearm purchases from May 2024 to November 2024, he listed his address as 2823 Table Rock Rd, Medford, Oregon. On the ATF form to purchase the firearm, Melo Santos listed "Mexico" as place of birth and for country of citizenship, he checked the box next to United States.

On July 14, 2025, an immigration query was conducted through Immigration and Customs Enforcement (ICE) and determined that Samuel Rodrigo Melo Santos was apprehended by border patrol near Three Points, Arizona on May 4, 2024, while attempting to illegally enter the U.S. He was granted a Voluntary Return (VR) to Mexico through the Nogales, Arizona Point of Entry. No other USCIS or Customs and Border Patrol records exist past this encounter. This indicates that Samuel Rodrigo Melo Santos successfully entered the U.S. illegally and is currently present in the U.S. without proper documentation to be here.

On December 16, 2025, agents served a search warrant at residences and vehicles associated with Melo Santos and the co-defendants. Agents found suspected marijuana, approximately 1 ½ pounds of methamphetamine, scales, over $10,000 cash, two colt firearm magazines, a few rounds of ammunition, and an empty Ruger rifle case. Notably, police found no firearms.

When interviewed through a Spanish speaking interpreter, Melo Santos said he purchased all the firearms and sold them after purchase in "the streets" to anyone. He said he'd sell them through word of mouth or with an app on his phone. He did not elaborate on the app he used. He said he would sell them to others who couldn't legally buy them. He admitted he was unsure

**Government's Detention Memorandum**                                    **Page 2**

how many guns he purchased.  He said he purchased the firearms from an FFL in Cave Junction because he overheard that the store would sell to those illegally in the United States and the FFL did not ask about immigration status.  He said the FFL would fill out the part of the form indicating he was a U.S. Citizen.

When asked why he was buying firearms, Melo Santos said he bought them with the purpose of selling them.  He said he would make $100-$150 per gun.  He said that someone would tell him where to go meet the firearm buyer and that this was over the phone.  He said he would call the person to have him find a buyer and that he would sometimes take photos of the firearm on his phone.  He said he may have scratched off the serial numbers on the of the firearms.  Melo Santos admitted that at some point he was denied when he attempted to purchase firearms.  He also said he stopped buying firearms because it was not very good money, and someone told him to stop.  He said he would buy ammunition because he had friends with firearms who wanted ammunition.  He said he stopped buying ammunition because someone at work told him to stop.

Melo Santols said he was the first of the co-defendants to buy and sell firearms and they were sold to people who were unable to purchase firearms themselves.  He said he would call a contact, and they would send someone with a mask on to meet him.  He claimed he did not know who was purchasing the firearms or where they went after purchase.  He said he knew the contact since he worked with him at a marijuana grow.  He said he had a friend there who was a drug addict that knew someone who bought them.

## II.    LEGAL STANDARD

**Government's Detention Memorandum**                                    **Page 3**

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government bears the burden of establishing risk of flight by a mere preponderance of the evidence. *See United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

18 U.S.C. § 3142(g) sets forth the statutory factors to consider: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Finally, the Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *Winsor*, 785 F.2d at 756; *see also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

### III.    NO CONDITIONS CAN REASONABLY ASSURE DEFENDANT'S APPEARANCE AS REQUIRED.

This Court cannot fashion any combination of conditions that would reasonably assure defendant's appearance at future proceedings. Defendant's personal circumstances and the

nature and gravity of his offenses render him too able and too incentivized to flee, and no conditions could effectively mitigate that risk.

Each of the relevant statutory factors weigh in favor of detention.

### a. The Nature and Circumstances of the Offenses

The first factor—the nature and circumstances of the offense charged—contemplates consideration of not only the specific acts and charges alleged in the indictment, but also the potential penalty that may be imposed if the person is convicted. *See, e.g.*, *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Here, defendant has repeatedly illegally purchased firearms. The firearms are unaccounted for. His story about how, why and for whom he purchased the guns is suspect. In addition, one of the firearms he purchased was recently found in Mexico.

### b. The Weight of the Evidence

The second factor is the weight of the evidence. Although § 3142(g)(2) specifically enumerates weight of the evidence as a consideration in determining release, the Ninth Circuit has held that it is to be afforded less weight than the other statutory factors. *See Townsend*, 897 F.2d at 994; *Winsor*, 785 F.2d at 757. The weight of the evidence is, however, an important and relevant consideration in the Court's evaluation of whether a defendant "will fail to appear or will pose a danger to any person or to the community. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Here, the strong weight of the evidence supports defendant's continued detention. The government evidence is strong that the defendant is an illegal alien who lied on ATF forms and purchased 91 guns.

> c.  *The History and Characteristics of the Defendant*

Defendant's history and characteristics also favor his continued detention.

First, defendant has no ties to this jurisdiction or the United States.  Arguably most significant in the 'serious risk of flight' calculus is consideration of the [undocumented] defendant's ties to the jurisdiction and the United States relative to his or her foreign ties." *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1141 (D. Idaho 2023) (citing *Santos-Flores*, 794 F.3d at 1092).  *Id.*  "This fact-specific inquiry involves multiple factors: (i) length of residence in the jurisdiction and the United States; (ii) presence of family members in the jurisdiction and the United States; (iii) community ties to the jurisdiction and the United States; and (iv) ability to legitimately be employed and earn income in the United States."

Defendant has no known family ties in Oregon or the United States.  He appears to have no way to legally work and earn income in the United States.  This factor also justifies his continued detention.

> d.  *Danger to the Community*

The Bail Reform Act (18 U.S.C. §§ 3141, et seq.) authorizes the detention of individuals as a danger to the community under 18 U.S.C. §§ 3142(e) and (g) "even if the detention hearing is triggered only by a finding that the defendant presents a serious risk of flight under 18 U.S.C. § 3142(f)(2)."  *See United States v. Spirea*, 2024 WL 4903759 (D. Or. 2024).

> e.  *Impact of Defendant's Immigration Detainer*

Where a defendant has previously been ordered removed, a court may consider defendant's removal order as a circumstance in the totality of circumstances to be considered under the "individualized evaluation" required by the Bail Reform Act.  *United States v. Diaz-*

**Government's Detention Memorandum**                                      **Page 6**

*Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  The court may not, however, consider an immigration detainer as dispositive evidence to support either a categorical denial or grant of bail.  *Id.*  "A defendant's immigration detainer is not a factor in this analysis, whether as evidence for or against a finding that the defendant poses a risk of nonappearance."  *Id.*  Rather, "in assessing a motion to detain a defendant pending trial, a district court must conduct an individualized evaluation that is guided by the factors articulated at 18 U.S.C. § 3142(g)."  *Id.* This includes circumstances such as "multiple unlawful reentries," that a defendant is "facing a significant prison sentence," and "the weight of evidence."  *Id.*  (citing its affirmance of the detention order under an individualized analysis in *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)).  Simply put, "alienage may be taken into account" but "it is not dispositive."  *Diaz-Hernandez*, 943 F.3d at 1198.[1]

Here, Defendant's has not previously been ordered removed but was caught attempting to cross the border.  He was voluntarily removed when caught.  This removal is relevant in

---

[1] The Ninth Circuit—and other circuits that have considered the issue—have made clear that "detention of a criminal defendant pending trial pursuant to the Bail Reform Act and detention of a removable alien pursuant to the Immigration and Nationality Act are separate functions that serve separate purposes and are performed by different authorities." *Diaz-Hernandez*, 943 F.3d at 1199 (emphasis added); *see also United States v. Barrera-Landa*, 964 F.3d 912 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020); *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019); *United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019); *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019); *United States v. Veloz-Alonso*, 910 F.3d 266, 269 (6th Cir. 2018). "A district court, addressing whether pre-trial detention is appropriate under the Bail Reform Act, may not speculate as to what may or may not happen in the future to the defendant under a different statutory and regulatory regime." *Diaz-Hernandez*, 943 F.3d at 1199.  It is the individualized assessment of the BRA factors that controls this Court's release decision, not the existence or non-existence of a detainer or the likelihood of specific action by immigration authorities. This Court should decline any invitation by Defendant to wade into that separate process, and should instead conduct the individualized assessment of the BRA factors as mandated by statute and confirmed in *Diaz-Hernandez*.

**Government's Detention Memorandum**                                                      **Page 7**

supporting the government's arguments that defendant is a flight risk and there are no conditions or combination of conditions that can reasonably assure his appearance for future proceedings in this matter. Defendant's removal order in his immigration case subjects him to further immigration process including custody and removal. *See* 8 U.S.C. § 1231(a)(5) (providing for reinstatement of a prior removal order); *Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2017) (for aliens whose prior order of removal has been reinstated, the detention provisions of 8 U.S.C. § 1231(a) apply, including mandatory custody); 8 C.F.R. § 241.3(a) (once the removal period begins "an alien in the United States will be taken into custody pursuant to the warrant of removal"); *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (during the 90-day removal period for aliens whose removal order has been reinstated, those "aliens must be held in custody"). The specter of that process gives defendant added incentive to flee in order to avoid further custody, a reinstated removal order, and physical removal.

   f.  *No Conditions Will Reasonably Assure Defendants' Appearance*

  No conditions of release will reasonably assure defendant's appearance—nor could any realistic set of restrictions do so in these circumstances. Defendant has no ties to Oregon, offering no incentive for him to return for future proceedings. Defendant should remain detained pending trial.

/ / /

/ / /

/ / /

**Government's Detention Memorandum**        **Page 8**

**IV.    CONCLUSION**

Given the manifest risk that Defendant will flee prosecution, the government respectfully moves this Court to order he be detained.

Dated:  December 29, 2025

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

s/ *Judith R. Harper*
JUDITH R. HARPER
Assistant United States Attorney